IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00333-RBJ

UNITED STATES OF AMERICA

    Plaintiff,

v.

1. WAYNE TYNER,

    Defendant.

---

# PLEA AGREEMENT

---

The United States of America (the government), by Jason R. Dunn, United States Attorney for the District of Colorado, through Assistant United States Attorney Gregory A. Holloway, and the defendant, Wayne Tyner, personally and by counsel, Peter Hedeen, submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1.

## I. AGREEMENT

The defendant agrees to plead guilty to Count 1 of the Information, charging a violation Title 18, United States Code, Sections 1039 and 2, Fraud in Connection with Obtaining Confidential Phone Records and Aiding and Abetting the Same. The defendant also agrees to waive certain appellate rights, as explained in greater detail below.

The defendant further agrees to relinquish to the United States all claim, title and interest the defendant has in the following firearm seized from him which was given to him by co-conspirator Matthew Marre: (1) Glock 17, 9 mm pistol S/N: BFMW370.

In exchange for the defendant's plea of guilty and waiver of certain appellate rights, the United States agrees to: (1) recommend the Court give the defendant full credit for acceptance of responsibility per United States Sentencing Guidelines (USSG) § 3E1.1, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing; (2) recommend a sentence at the bottom of the guideline range as ultimately calculated by the Court; and (3) agree not to charge the defendant with any additional violations based on facts and evidence currently known to the U.S. Attorney's Office for the District of Colorado, specifically prosecution of the defendant for additional violations of Title 18, United States Code, Sections 1039.

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following criteria: (1) the sentence exceeds the maximum penalty provided in the statute of conviction; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 7; or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the

defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

## II. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offense to which this plea is being tendered are as follows:

For Count 1, Fraud in Connection with Obtaining Confidential Phone Records:[1]

*First*, the defendant did knowingly and intentionally obtain, or attempt to obtain confidential phone records information from a covered entity;

*Second*, the defendant did so by making false and fraudulent statements and representations to an employee of a covered entity; or, provided a document to a covered entity knowing such document was false and fraudulent; and

*Third*, the defendant's statements and representations or documents obtaining or attempting to obtain the confidential phone records information was in interstate or foreign commerce.

"Confidential Phone Records Information" means information that relates to the quantity, technical configuration, type, destination, location or amount of use of a service offered by a covered entity, subscribed to by any customer of that covered

---

[1] Title 18, United States Code, Section 1039.

entity, and kept by or on behalf of that covered entity solely by virtue of the relationship between that covered entity and the customer.[2]

"Covered Entity" means any provider of telecommunications services.[3]

The information also charges Aiding and Abetting, which provides that: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."[4]

This law makes it a crime to intentionally help someone else commit a crime. To find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*, someone else committed the charged crime, and

*Second*, the defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him.

The defendant need not perform the underlying criminal act, be present when it is performed, or be aware of the details of its commission to be guilty of aiding and abetting. But a general suspicion that an unlawful act may occur or that something criminal is happening is not enough. Mere presence at the scene of a crime and knowledge that a crime is being committed are also not sufficient to establish aiding and abetting.[5]

---

[2] Title 18, United States Code, Section 1039(h)(1)(A).
[3] Title 47, United States Code, Section 153(51), as referred by Title 18, United States Code, Section 1039(h)(2)(A).
[4] Title 18, United States Code, Section 2.
[5] Tenth Circuit Pattern Jury Instructions, 2.06 (2011).

## III. STATUTORY PENALTIES

The statutory penalty for Count 1 is not more than 10 years imprisonment, not more than a $250,000 fine, or both; not more than 3 years supervised release; and a $100 special assessment fee.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## IV. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. If the defendant is an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## V. STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

5

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

The parties agree that the date on which relevant conduct began is in March of 2018 and the date on which relevant conduct ended is April 2, 2019, both dates being approximate and inclusive.

The parties further agree as follows:

On November 26, 2018 the FBI Rocky Mountain Safe Streets Task Force (RMSSTF) was contacted about possible fraud in connection with emergency requests made to cell phone carriers for location assistance. Each of the four carriers -- Sprint Corporation, Verizon Wireless, T-Mobile USA, and ATT Wireless -- have 24 hour Law Enforcement assistance operators that are available to assist in emergencies across the United States to aid any law enforcement agency that is involved in an emergency that potentially involves death or serious bodily injury.

Information is provided by these cell phone companies with legal court process compelling the companies to assist law enforcement; or, in an emergency, without legal process if the situation potentially involves death or serious bodily injury that could occur without immediate action.

Verizon Wireless advised that since June of 2018 until November 2018, five emergency requests for cell phone data were made on the Verizon Law Enforcement Help Center by a male who identified himself as Matthew Marre, claiming to be an investigator for the "Colorado Department of Public Safety" and the "Colorado Task

Force." During all five calls Verizon believed Marre was acting in the capacity of a law enforcement officer requesting immediate release of cell phone information from Verizon Wireless under federal laws 18 U.S.C. § 2702(b) and/or 18 U.S.C. §2702(c)(4) authorizing emergency disclosure. Each time Marre claimed an emergency that potentially involved the danger of death or serious physical harm. Verizon released the requested cell phone records to include GPS location to Matthew Marre.

On the fifth call in November of 2018, Verizon employees became suspicious that Marre may not be a law enforcement officer. When Verizon employees called Marre back to verify he was with a law enforcement agency, they found that the number provided by Marre did not belong to a legal law enforcement agency. Verizon notified the FBI that confidential phone records information to include GPS data was released to a Marre after Marre fraudulently claimed to be a law enforcement officer.

Investigators researched the phone numbers used by Marre for these requests, which were 720-354-0721 and 970-408-0773. Publicly available information verified these numbers were used by Matthew Marre. Multiple public sources, as well as law enforcement data bases, show Matthew Marre is working as a contractor for at least three Bail Bonds companies to locate and detain persons who have court bonds posted throughout various courts in the state of Colorado. The common or "street" term for this job action is often called a "bail bondsman", "bounty hunter" and "fugitive recovery agent", all who are private citizens with no law enforcement power under state or federal law. Further, Marre was previously convicted of a felony and was thus ineligible for employment as a law enforcement officer. Investigation revealed that Marre was fraudulently obtaining the confidential phone records information, specifically GPS

location data, in order to gain commercial advantage and economic gain in his work as a bounty hunter.

Believing Marre might have been in contact with the other three main national cell phone companies, investigators contacted ATT, T-Mobile and Sprint Wireless law enforcement assistance departments to see if Marre fraudulently obtained confidential phone records information from them as well. Investigation showed that he had done so.

## AT&T

### Count 1 of the Information

Matthew Marre called AT&T three times on August 19, 2018. Marre first spoke with an operator and explained that he was calling about phone number 210-716-5683. Marre said that a third party called 911 on behalf of the number and the person was making suicidal statements to "agents" and family members. Marre was asked to provide an e-mail address. Marre told AT&T the email matthew.marre@cotf.us. Marre gave his dispatch number as 970-408-0773 and identified himself as "Investigator Matthew Marre" with Colorado Public Safety. The AT&T operator then called 970-408-0773 and got a voice mail recording.

When AT&T got back on the call with Marre, the operator told Marre that he is trying to reach the number Marre provided, but was unable to reach anyone. Marre then told the operator that his supervisor accidently bumped the phone and told him to try again. The operator asked for the supervisor's name and title, and Marre responded that his supervisor was "Sergeant Wayne Hays" and says he is the "Supervisory Agent."

The operator then asked for Marre's badge number, which Marre said was "6003." Marre also said he is with "Colorado Public Safety" and provided an address as 308 Mountain View Avenue, Johnstown Colorado. The operator again called to confirm Marre's status, and got a voicemail that said, "You have reached the Colorado Department of Public Safety" and that it is after hours. The operator then got back on the line with Marre and asked him for another dispatch phone number besides the supervisor's number. Marre said they did not have a dispatch center, because they are a "hodge podge of different groups" and not "one specific agency."

The AT&T operator put Marre on hold again and called the Colorado State Patrol; the Johnstown Police; and, finally reached a dispatcher with the Weld County Communications Center. Weld County Dispatch was unable to confirm who Matthew Marre was or whether he worked for a law enforcement agency.

When the AT&T operator returned to Marre, Marre questioned why it was taking so long and wanted to know what he could do to expedite things since this was an "emergency situation."

Still trying to assist Marre, the AT&T operator then called and spoke with a male who identified himself as "Sgt. Wayne Hays." This person was, in fact the defendant, Wayne Tyner. When the defendant answered the phone he did not give his last name right away. The defendant initially forgot what the false name was that he was giving, first saying that his name was "Sgt Wayne Hall." The defendant then corrected himself and changed it to "Hays." The AT&T operator told the defendant that he was calling to verify that Marre is on duty. The defendant confirmed that Marre was "on duty" and said that his own (Hays) badge number was "1926." The AT&T operator got back on

9

the phone with Marre and confirmed the number Marre wanted pings for and told Marre he would call Marre back on the number 720-354-0721. The defendant listened to a recording of this call and identified himself as the person pretending to be Sgt. Wayne Hays.

The defendant knew that Marre was not a law enforcement officer when he agreed to help Marre in attempting to trick AT&T into believing Marre was a law enforcement officer. The defendant talked with Marre and agreed to answer Marre's office number, 970-408-0773. When AT&T called 970-408-0773 on August 19, 2018 in an attempt to verify Marre's status with a supervisor, the defendant answered and falsely told them that Marre was a law enforcement officer working on a case involving exigent circumstances.

VI. **ADVISORY GUIDELINE COMPUTATION AND 18 U.S.C. § 3553 ADVISEMENT**

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government has an independent obligation to assist the Court in making an accurate determination of the correct

guideline range. To that end, the government may make legal or factual arguments that affect the estimate below.

    A.    The base guideline is §2H3.1, with a base offense level of **9**.

    B.    The parties agree that there are no specific offense characteristics that apply to the defendant's conduct in this offense.

    C.    There are no victim-related or obstruction adjustments.

    D.    There are no multiple count adjustments.

    E.    The adjusted offense level would be **9**.

    F.    <u>Acceptance of Responsibility</u>: The defendant should receive a **2-level decrease** for acceptance of responsibility under §3E1.1 (as the offense level would be less than 16), resulting in a total offense level **7**.

    G.    <u>Criminal History Category</u>: The parties understand that the defendant's criminal history computation is tentative. The criminal history category is determined by the Court based on the defendant's prior convictions. Based on information currently available to the parties, it is estimated that the defendant's Criminal History Category would be I.

    H.    Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments do not apply.

    I.    <u>Imprisonment</u>: The advisory guideline range of imprisonment resulting from an offense level of 7 and a Criminal History Category I is **0 – 6 months**. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level could conceivably result in a range from 0 months (bottom of Category I) to 21 months (top of Category VI). The guideline range

would not exceed, in any case, the statutory maximum applicable to the counts of conviction.

J.   Fine: Pursuant to guideline §5E1.2, assuming the estimated offense level of 7, the fine range for this offense would be **$ 1,000 to $9,500**, plus applicable interest and penalties.

K.   Supervised Release: Pursuant to guideline §5D1.2, if the Court imposes a term of supervised release, that term is **no more than 3 years**.

L.   Restitution: Restitution is not applicable.

The parties understand that, although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less

than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.  ENTIRE AGREEMENT

The agreement disclosed to the Court is the parties' entire agreement. There are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 1-7-2021

Wayne Tyner
Defendant

Date: 1-7-2021

Peter Hedeen
Attorney for Defendant

Date: 12/29/2020

s/ Gregory A. Holloway
Gregory A. Holloway, Assistant U.S. Attorney
Attorney for the Government

13